# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

NATHANEAL JOEL ELMORE     )
)
     Plaintiff,          )
)
VS.                        )          No. 16-1101-JDT-cgc
)
DERRICK SCHOFIELD, ET AL.,    )
)
     Defendants.       )

___

## ORDER DENYING PENDING MOTIONS,
## DISMISSING COMPLAINT AND GRANTING LEAVE TO AMEND

___

On May 13, 2016, Plaintiff Nathaneal Joel Elmore ("Elmore"), who is presently incarcerated at the Trousdale Turner Correctional Center in Hartsville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 accompanied by a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) The complaint concerns his previous incarceration at the Hardeman County Correctional Facility ("HCCF") in Whiteville, Tennessee. The Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 4) The Clerk shall record the Defendants as Derrick Schofield, former Commissioner of the Tennessee Department of Correction ("TDOC"); Damon Hininger, President of Corrections Corporation of America ("CCA"); HCCF Warden Grady Perry; TDOC Commissioner of Operations Jason Woodall; HCCF Assistant Warden Charlotte

Burns; Health Services Administrator Jill Miller; TDOC Medical Director Dr. Kenneth Williams; HCCF Dr. Bernard Dietz; HCCF Nurse Practitioner Ollie Herron; HCCF Registered Nurse Jill Sharon; HCCF Registered Nurse Ashley Harris; and HCCF Registered Nurse Tammy Pettigrew. Defendants are sued in their individual and official capacities.

## I. The Complaint

Elmore's complaint contains several exhibits and attachments, some of which are unreadable due to the poor quality of the original documents. Elmore asserts claims pursuant to 42 U.S.C. §§ 1983, 1985(3), (5) and 1986 and pursuant to Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12132 *et seq.* (ECF No. 1 at 1.) Elmore alleges that on June 30, 2015, he woke up with high-pitched ringing in his ear which has caused deafness in his right ear, dizziness, light headedness, nausea, vomiting, popping in his right ear, unbalanced walking and nosebleeds, as well as anxiety, depression, and emotional stress. (*Id*. at 7.) Elmore contends that since June 30, 2015, he has brought these symptoms to the attention of various prison officials in order to get proper diagnosis and treatment; however, he has been unsuccessful. (*Id.*)

Attached as exhibits to the complaint are twenty-one sick call submission forms from July 6, 2015 to January 24, 2016, in which Elmore complains of his on-going discomfort (ECF No. 1-1 at 2-3, 5, 7-9, 11-23, 25); in two of the requests, he refers to a CT scan that was done (*id.* at 11, 15). Also attached are four responses from prison officials generally stating that Elmore was seen by medical on certain dates. (*Id.* at 4, 6, 10, 24.) Similarly, Elmore included exhibits of sixteen inmate request forms from July

15, 2015 to November 24, 2015, which mostly replicate the sick call forms; however, they also include complaints about Elmore's mental health issues and his difficulty in attending school while having symptoms from his ear issues. (ECF No. 1-2.)

In an attached grievance, Elmore complained that he saw Defendant Dietz on November 4, 2015. (ECF No. 1-4 at 21-22.) Elmore alleged Dietz refused to send him to a specialist or to the Deberry Special Needs Facility and that he prescribed Zoloft, to which Elmore is allergic, without first discussing it with Elmore. (*Id,*) Additionally, Elmore contends that if his ear problems were fixed instead of being ignored, he would not need medication for anxiety and depression. (*Id.*)

Elmore also submitted an affidavit setting out a day-to-day description of his experiences from June 30, 2015 through February 3, 2016. (ECF No. 1-7.) While the portion of the document covering June 30 through October 20 and part of December 31 through February 3 are legible, the middle portion of the document covering October 21 through part of December 31 is unreadable.

Elmore's complaint includes the following allegations against the named individuals: Defendants Perry, Burns, Schofield, Hininger, and Woodall, who were made aware of Elmore's issues though grievances, failed to train their staff and employees regarding their duties toward inmates generally and toward Elmore specifically (ECF No. 1 at 9); Defendant Miller failed to train her staff and employees and denied Elmore's emergency medical requests from June through November of 2015 (*id.* at 9-10, *see also* ECF No 1-3); Defendant Williams failed to consult with the HCCF medical department after being made aware of Elmore's grievances (*id.* at 10); and Defendants Dietz, Herron,

Sharon, Harris, and Pettigrew failed to perform their duties as part of the HCCF medical staff  (*id.* at 10-11).

Elmore contends that as a result of Defendants' actions, he was exposed to further "serious nerve ending and damages to internal body organs as injuries and caused him prolonged suffering of extreme body pains." (*Id.* at 12.)  Elmore alleges that at the time of this filing, no doctor has performed a full physical, including an MRI, to diagnose his injures.  (*Id.*)  Elmore contends that as a result of the lack of treatment, Defendant Perry failed to protect Elmore's rights under the Eighth Amendment, and the medical Defendants were deliberately indifferent to his medical needs as well as failed in their special medical duty to perform.  (*Id.*at 14.)

Elmore seeks $1 million in compensatory and punitive damages.  (*Id.* at 18.)

## II.  Analysis

A.    <u>Screening and Standard</u>

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1)    is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

> (2)    seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

B.    § 1983 Claim

Elmore filed his complaint pursuant to actions under 42 U.S.C. § 1983.  Section

1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements:  (1) a

deprivation of rights secured by the "Constitution and laws" of the United States (2)

committed by a defendant acting under color of state law.  *Adickes v. S.H. Kress & Co.*,

398 U.S. 144, 150 (1970).

Elmore also asserts claims pursuant to 42 U.S.C. §§ 1985(3) & (5), and 1986 and

pursuant to Title II of the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C.

§§ 12131-12132 *et seq*.

There is no statute designated 42 U.S.C. § 1985(5).  The complaint does not assert

a valid claim under 42 U.S.C. § 1985(3), which prohibits conspiracies "for the purpose of

depriving, either directly or indirectly, any person or class of persons of the equal

protection of the laws or of equal privileges and immunities under the laws."

> [I]n order to state a cause of action under § 1985, the plaintiff must allege that the defendants (1) conspired together, (2) for the purpose of depriving,

directly or indirectly, a person or class of persons of the equal protection of the laws, (3) and committed an act in furtherance of the conspiracy, (4) which caused injury to person or property, or a deprivation of any right or privilege of a citizen of the United States, and (5) and that the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus.

*Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999); *see also Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007). The complaint alleges no facts to suggest that the conduct of any Defendant was motivated by racial animus.

A claim under 42 U.S.C. § 1986 is entirely derivative of a valid claim pursuant to 42 U.S.C. § 1985. *Bass*, 167 F.3d at 1051 n.5. Because Elmore has no valid claim under § 1985, he also has no claim under § 1986.

Elmore also purports to sue under Title II of the ADA which provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* § 12132. "The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." *Id.* § 12131(2). The term "public entity" includes "any State . . . government" and "any department, agency, special purpose district, or other instrumentality of a State[.]" *Id.* § 12131(1)(A)-(B). The Supreme Court has held that Title II of the ADA applies to

prisoners housed in state prisons. *Pennsylvania v. Yeskey*, 524 U.S. 206, 213 (1998). Thus, Title II applies to claims that an inmate has been denied the benefit of, or excluded from participation in, "recreational activities, medical services, and educational and vocational programs." *Id.* at 210 (internal quotation marks omitted).

Although Plaintiff's ADA claim suffers from several deficiencies, it is unnecessary to address each defect in detail because a claim about substandard medical care ordinarily is not actionable under Title II of the ADA. *See, e.g., Brown v. Deparlos*, 492 F. App'x 211, 215 (3d Cir. 2012) ("Brown's complaint merely asserts that defendants violated the ADA and fails to allege any facts that demonstrate that the alleged inadequate or improper medical care he received was because of a disability."); *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) (per curiam) (challenge to medical treatment decisions not actionable under ADA); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) ("purely medical decisions . . . do not ordinarily fall within the scope of the ADA"); *Spencer v. Easter*, 109 F. App'x 571, 573 (4th Cir. 2004) (per curiam) (claim of inadequate medical care not actionable under the ADA absent evidence of discriminatory intent arising from prisoner's disability); *Baldridge-El v. Gundy*, No. 99-2398, 2000 WL 1721014, at *2 (6th Cir. Nov. 8, 2000) (ADA does not provide a cause of action for medical malpractice); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("the [ADA] would not be violated by a prison's simply failing to attend to the medical needs of its prisoners").

Elmore's claims against TDOC employees Schofield and Woodall in their official capacities are brought against the State of Tennessee. "[A] suit against a state official in

his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted).

Plaintiff has no valid claim against the State of Tennessee. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Employees of Dep't of Pub. Health & Welfare v. Mo. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 280 (1973); *see also Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). By its terms, the Eleventh Amendment bars all suits, regardless of the relief sought. *Pennhurst*, 465 U.S. at 100-01. Tennessee has not waived its sovereign immunity. Tenn. Code. Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will*, 491 U.S. at 71.

Elmore's official capacity claims against the remaining Defendants, who are CCA officers and employees, are properly construed as claims against CCA. However, the complaint does not allege a viable claim against CCA or the CCA Defendants in their official capacities. "A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)); *see also Parsons v. Caruso*, 491 F. App'x 597, 609 (6th Cir. 2012) (corporation that provides medical care to prisoners can be sued under § 1983). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or provide medical care to prisoners. *Thomas*, 55 F. App'x at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001). CCA "cannot be held liable under a theory of respondeat superior." *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011). Instead, to prevail on a § 1983 claim against CCA, Elmore "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Id.* Elmore does not allege that his injuries are due to an unconstitutional policy or custom of CCA.

Under 42 U.S.C. § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must plead that each Government-official defendant,

through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted). A supervisory official who is aware of the unconstitutional conduct of her subordinates, but fails to act, generally cannot be held liable in her individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). Elmore's conclusory claims against Defendants Perry, Burns, Schofield, Hininger, Woodall, and Miller on the basis of failure to supervise, control or train their staff do not sufficiently allege the type of personal involvement that is necessary for individual liability under § 1983.

Similarly, Elmore has no cause of action against these supervisory Defendants for failing to investigate or take remedial measures in reponse to his complaints. A failure to take corrective action in response to a grievance or complaint also does not supply the necessary personal involvement for § 1983 liability. *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not."). In addition,

the Sixth Circuit has affirmed the dismissal of a claim of supervisory liability based on the "failure to investigate," stating:

> Young's claim against defendants McAninch and Goff is based solely on their alleged failure to investigate defendant Ward's behavior towards Young. Although Young stated that defendants McAninch and Goff had knowledge of his allegations against defendant Ward, this is insufficient to meet the standard that they either condoned, encouraged or knowingly acquiesced in the misconduct.

*Young v. Ward*, No. 97-3043, 1998 WL 384564, at *1 (6th Cir. June 18, 1998).

The main focus of Elmore's complaint is the alleged failure to treat his ear condition. "The right to adequate medical care is guaranteed to convicted federal prisoners by the Cruel and Unusual Punishments Clause of the Eighth Amendment." *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). "A prisoner's right to adequate medical care 'is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs.'" *Id.* at 874 (quoting *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)); *see also Santiago v. Ringle,* 734 F.3d 585, 590 (6th Cir. 2013) (same). "Although the right to adequate medical care does not encompass the right to be diagnosed correctly, [the Sixth Circuit] has long held that prison officials who have been alerted to a prisoner's serious medical needs are under an obligation to offer medical care to such a prisoner." *Johnson*, 398 F.3d at 874 (internal quotation marks and citation omitted).

The objective component of an Eighth Amendment claim requires that a prisoner have a serious medical need. *Blackmore*, 390 F.3d at 895; *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is one that has

been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897 (internal quotation marks and citations omitted); *see also Santiago,* 734 F.3d at 590 (same); *Johnson*, 398 F.3d at 874 (same). Plaintiff alleges that he suffered severe pain resulting from a condition in his right ear. Thus, Plaintiff has sufficiently alleged an objectively serious medical condition.

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he or she had a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). The plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus,

> *[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.* This approach comports best with the text of the Eighth Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to

> assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837-38 (emphasis added; citations omitted); *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005) ("If the officers failed to act in the face of an obvious risk of which they should have known but did not, then they did not violate the Fourteenth Amendment.").

"'[T]hat a [medical professional] has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment.'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "The requirement that the official have subjectively perceived a risk of harm and then disregarded it is meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock*, 273 F.3d at 703. "When a doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Id.*; *see also Johnson*, 398 F.3d at 875 (same). "'[D]eliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'" *Comstock*, 273 F.3d at 703 (quoting *Farmer*, 511 U.S. at 836).

In his complaint, Elmore complains only generally about inadequate treatment, which is insufficient to satisfy the subjective component of an Eighth Amendment claim. Elmore provides more specific details in his exhibits; however, as noted *supra*, portions of his exhibits are unreadable, thus making it difficult for the Court to ascertain what level of treatment he allegedly received or what further treatment he alleges was denied. In Elmore's attached affidavit, he notes that he was given a CT scan was but was having difficulty getting the results (ECF No. 1-7 at 12-16); however later in the affidavit (after several unreadable pages) he notes that an inmate told him of another inmate with similar conditions whose prognosis could not be determined by a CT scan (*id.* at 28). Elmore also states that he has been told to apply a hot rag to his ear three times a day; however, it is apparent that he finds this insufficient. (*Id.*) Without being able to interpret the full affidavit, the Court is unable to determine the full extent of Elmore's claims for medical indifference. What is provided indicates that treatment was provided, although not the treatment Elmore wanted or at the speed he desired. Such claims are properly litigated as claims for medical malpractice, not deliberate indifference under the Eighth Amendment.

On May 26, 2016, Elmore filed a motion which, in essence, is a request for his medical records. (ECF No. 5.) Elmore filed a similar motion on August 12, 2016, asking the court to order the release of his medical records. (ECF No. 11.) These requests are construed as requests for discovery. All discovery in this case must be conducted in accordance with Rules 26 through 37 of the Federal Rules of Civil Procedure. Discovery should be conducted between the parties, without the involvement of the Court, unless a dispute arises that cannot be resolved without Court intervention. Therefore, Plaintiff

should not file his discovery requests as "motions" with the Court.[1]  In addition, any discovery requests are premature at this time because the Court has not ordered that process be issued for any Defendant.  Therefore, the motions for discovery are DENIED.

On July 5, 2016, Elmore filed a motion for appointment of counsel.  (ECF No. 7.) Pursuant to 28 U.S.C. § 1915(e)(1), the "court may request an attorney to represent any such person unable to employ counsel."  However, "[t]here is no constitutional or . . . statutory right to counsel in federal civil cases." *Farmer v. Haas*, 990 F.2d 319, 323 (7th Cir. 1993), and "§ 1915(d) does not authorize the federal courts to make coercive appointments of counsel" to represent indigent civil litigants, *Mallard v. United States Dist. Court*, 490 U.S. 296, 310 (1989).  Generally, a court will only appoint counsel in exceptional circumstances. *Willett v. Wells*, 469 F. Supp. 748, 751 (E.D. Tenn. 1977). Although "no comprehensive definition of exceptional circumstances is practical," *Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982), courts resolve this issue through a fact-specific inquiry. *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986). Examining the pleadings and documents in the file, the Court analyzes the merits of the claims, the complexity of the case, the *pro se* litigant's prior efforts to retain counsel, and his ability to present the claims. *Henry v. City of Detroit Manpower Dep't*, 763 F.2d 757, 760 (6th Cir. 1985); *Wiggins v. Sargent*, 753 F.2d 663, 668 (8th Cir. 1985).

As a general rule, counsel should be appointed in civil cases only if a litigant has made "a threshold showing of some likelihood of merit." *Cooper v. A. Sargenti Co.*, 877

---

[1] If a motion to compel becomes necessary, the disputed discovery requests and any responses thereto should be filed as exhibits to the motion to compel.

F.2d 170, 174 (2d Cir. 1989). Because Elmore has not met the threshold showing likelihood of success, the motion for appointment of counsel is DENIED.

On July 5, 2016, Elmore filed a motion to serve defendants. (ECF No. 8.) Where a civil case is filed by an indigent prisoner, summonses are not issued and the defendants are not served unless and until the case has been screened and allowed to go forward under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b). *See* Local Rule 4.1(b)(3). Plaintiff's motion is DENIED as premature.

On July 5, 2016 and August 12, 2016, Elmore filed motions asking about the status of the case. (ECF Nos. 9 & 10.) Elmore received copies of the docket after each request; additionally, this order provides the status of the case. Therefore, the motions are MOOT.

### III. Standard For Leave to Amend

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, No. 12-1403, 2013 WL 646489, at *1 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Brown*, 2013 WL 646489, at *1; *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile,

then a *sua sponte* dismissal may stand."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, with the exception of Elmore's § 1983 claims against Defendants in their official capacities, the Court cannot conclude that any amendment to Elmore's complaint would be futile as a matter of law.

## IV. Conclusion

The Court DISMISSES the complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). However, leave to amend is GRANTED. Any amendment must be filed within thirty (30) days after the date of this order. Elmore is advised that an amended complaint supersedes the original complaint and must be complete in itself without reference to the prior pleadings. The text of the complaint must allege sufficient facts to support each claim without reference to any extraneous document. Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint. All claims alleged in an amended complaint must arise from the facts alleged in the original complaint or the first amended complaint. Each claim for relief must be stated in a separate count and must identify each defendant sued in that count. If Elmore fails to file an amended

complaint within the time specified, the Court will assess a strike pursuant to 28 U.S.C. § 1915(g) and enter judgment.

Elmore is reminded that he must promptly notify the Clerk, in writing, of any change of address or extended absence.

IT IS SO ORDERED.

s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE